IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DIDION MILLING, INC., DERRICK CLARK,
SHAWN MESNER, JAMES LENZ, and JOEL
NIEMEYER,

                Defendants.

OPINION and ORDER

22-cr-55-jdp

---

The court held a conference on September 20 to resolve several pretrial motions, objections to the government's notice under Federal Rule of Evidence 801(d)(2)(E), objections to exhibits, and other disputed issues. The court also discussed objections to trial document drafts. This order will summarize the court's rulings and set some new deadlines. Revised versions of the voir dire, jury instructions, and verdict form are attached.

ANALYSIS

**A. Motions**

Clark's renewed motion to dismiss Count 1, Dkt. 407, and Didion's renewed motion to dismiss Count 2, Dkt. 404, are DENIED, essentially for the same reasons that the court denied defendants' original motions to dismiss these counts. But the court has revised the jury instructions to address concerns raised in the motions.

Didion's motion to reconsider excluding the testimony of Robert Zalosh and Brenton Cox, Dkt. 391, is GRANTED. The court is persuaded that Zalosh's and Cox's reports are not fundamentally unreliable, and the weaknesses identified by the court can be adequately

addressed by cross-examination. As a result of this ruling, the government's motion to exclude the testimony of Jeffrey Travis as derivative of Zalosh and Cox, Dkt. 385, is DENIED as moot.

The parties represented during the conference that there is no dispute regarding Lenz's motion to restrict the government's arguments regarding the baghouses. So that motion, Dkt. 421, is GRANTED as unopposed.

The government's motion for leave to use the recently disclosed photos and drone footage of the mill from after the explosion, Dkt. 405, is GRANTED in part. The government may use photos when cross-examining Zalosh and Cox, but not in its case-in-chief. The basis for compelling production of those photos was not to help the government with its case-in-chief, but to prevent defendants' experts from making a misleading or incomplete presentation of the facts, so the government's use of those photos during trial must be limited accordingly.

The government's motion for reconsideration regarding the order and mode of witnesses, Dkt. 396, is GRANTED. The default rule during trial will be that cross-examination is limited to the scope of direct examination. If any party wishes to deviate from the general rule as a courtesy to a particular witness, that party will have to seek permission from the court and explain why the change is needed for that witness.

The government's motion for rulings on authenticity of certain documents, Dkt. 431, is DENIED. As for the bank records (US22, 1519, and 1623) and Clark's OneNote files (US1305–07), defendants have stipulated to their authenticity. As for the documents with Bates stamps "DIDION" and "DidionDOJ," Didion has stipulated to the authenticity of any document it created. The government is directed to identify for defendants the exhibits in these two groups whose authenticity remains unclear, so that Didion can determine whether it would stipulate to authenticity. The court expects Didion to work collaboratively with the

government in identifying documents that can be authenticated through stipulation. The court has conditionally excluded the documents related to the 2001 OSHA inspection of the Johnson Creek facility, so it isn't necessary to consider those documents now. Because Didion refuses to stipulate to the authenticity of the 2017 Master Sanitation Schedule, the government will have to authenticate the 2017 Master Sanitation Schedule through testimony during trial. The court authorizes the government to issue any needed subpoena, and Didion agrees to accept email service of subpoenas to Didion itself or to any of its agents, including its lawyers.

The government's motion to amend its exhibit list to add US1790–96, Dkt. 444, is GRANTED in part. The court will allow the government to use US1791 and 1795 (with the diagram legends in US1790 and 1794) as demonstrative exhibits to illustrate Vergara's testimony. The government is directed to submit pdf versions of US1790 and 1794. The court will exclude US1792, 1793, and 1796.

**B. Other disputed issues**

The court grants the government's request to exempt the following witnesses from the sequestration order: Rigoberto Acevedo-Rendon, Alfredo Aguirre, Rene Alva de la Cruz, Alina Baciu, Hayden Dodge, Pablo Dominguez, Margaret Lane, Andy Osterhoff, Dallas Osterhoff, Bruno Ponte Real, Collin Vander Galien, Alex Wade. These individuals are victim witnesses who are entitled to remain in the courtroom "unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3). Defendants haven't met that standard.

The court denies defendants' request to reconsider its ruling that defendants may not cross-examine John Cholin about the government's decision to dismiss Count 3. Defendants may cross-examine Cholin about any changes to his opinions.

The court will allow Cholin to revise his report with new calculations, but no new opinions or analysis. If any of those revised calculations carry over to his rebuttal report, Cholin may revise that accordingly. The court will give the government a deadline for Cholin to explain the reason for the changes, provide a redline document showing the changes, and for defendants' experts to supplement their reports to respond to the revisions.

When the government provides notice of the day that a particular witness will testify, the government will also disclose whether that witness had any conversations with government employees about any benefit to the witness for their testimony, including any improvement to their immigration status. If the witness had such a conversation, the government will also disclose the witness's immigration status. During trial, defendants may ask witnesses whether they expect or hope to obtain a benefit from the government for their testimony, but defendants may not ask any witnesses whether they are or were undocumented or present in the country illegally.

## C. Objections to Rule 801(d)(2)(E) proffer

The court sustained some objections to the government's proffer on the coconspirator statements that it intends to offer under Federal Rule of Evidence 801(d)(2)(E). Dkt. 419. Specifically, the government may not offer the following exhibits under Rule 801(d)(2)(E): US165, 699, 699a, 787a, 797a, 800a, 1309, 1316, 1319, 1320, 1323, 1324, 1325. These statements were not identified by July 7 as directed by the court.

The court overruled most of the other objections to the government's proffer, but the court reserved a ruling on Lenz's motion to exclude all statements that the government may offer against Lenz under Rule 801(d)(2)(E). This motion, Dkt. 422, is now GRANTED.

A proffer under Rule 801(d)(2)(E) requires the government to show three things by a preponderance of the evidence: 1) a conspiracy existed; 2) the defendant and the declarant were members of the conspiracy; and 3) the proffered statements were made during the course of and in furtherance of the conspiracy. *U.S. v. DeKelaita*, 875 F.3d 855, 859–60 (7th Cir. 2017); *U.S. v. Quiroz*, 874 F.3d 562, 566 (7th Cir. 2017). The government hasn't shown by a preponderance of the evidence that Lenz was a member of a conspiracy related to falsified environmental records.

Lenz concedes that the baghouse pressure logs, including those created during his tenue, were falsified. Dkt. 422, at 2. But the commission of the substantive crime, or knowledge that others were committing the substantive crime, is not enough to establish either the existence of a conspiracy or that a defendant was a member of the conspiracy.

The government says, Dkt. 441 at 8–9, that the proof against Lenz on the Count 4 conspiracy is set out on pages 27 through 30 and 45 through 48 of its proffer, Dkt. 408. The government points to no witness who will testify that Lenz agreed with others to falsify records or otherwise had joined a conspiracy concerning the concealment of environmental records. By contrast, the government's proffer of the Count 1 conspiracy concerning the sanitation records is detailed, documented, and corroborated. *See* Dkt. 408 at 11–26. In that part of the proffer, the witnesses explain what they did, and they name who they did it with. But for the environmental records, none of the witnesses name Lenz. Booker and Bright, two employees during Lenz's term at Didion don't name anyone specifically in the summary of their testimony

5

on the environmental records. But Booker and Bright name names and give details in the description of their testimony about the sanitation records. The contrast is striking.

The government relies primarily on email statements from Lenz himself directing Didion employees to fill in missing data in baghouse logs, or to make sure logs were up to date. US730, 731, 732, 733a–b, 739, 740–41, 747, 787a, 827 833. The government points to no evidence that Lenz was implying in these communications that employees should backfill records with false information. The government also points to no evidence that Lenz was talking in code or that the missing data could not be filled in correctly after the fact because the data had never been recorded.[1] One of the exhibits cited by the government, US732, affirmatively undermines the inference that Lenz was part of a conspiracy. In that email, written shortly before he left the company, Lenz observed that it appeared that "some people are just filling in numbers without reading the gauge." This statement suggests that Lenz was trying to call attention to a record-keeping deficiency, not conspiring to falsify records.

Based on the court's review of the government's proffer, there are two statements by Lenz that suggest that he was less than forthcoming about environmental problems at Didion. The first is in a lengthy memo prepared shortly before his departure, describing his duties as environmental manager. Lenz wrote:

> Internal environmental audits are tricky because you really can't document anything you find wrong unless you report it to the DNR. To follow the letter of the law you must report any violation to the WDNR, calculate excess emissions and find a root cause solution so it won't happen again. There [are] self-reporting protections from prosecution but there are limits. Many times you will find that things are not documented. When the root cause is

---

[1] Lenz's counsel represented during the September 20 conference that the data had been recorded elsewhere and could be transferred to the logs. The government did not dispute that representation.

> that it is written on paper and just not typed into the computer log. This is not a violation because it is documented but can cause many questions to be asked.

US699b, at 10. Drawing inferences in the government's favor, this statement suggests that Lenz was reluctant to document or report environmental violations to the WDNR, and that he shared his reluctance with his successor environmental manager.

The second statement was in an email to Didion staff as Lenz was preparing for an external audit. Lenz wrote, "I will be printing paper records of all these items listed. So please get them up to date. I do not want to show computer records because it is too easy to search for bad records." US797a. The statement suggests that Lenz didn't want the auditor to find "bad records" and wouldn't help the auditor do so.

Neither of those inferences shows Lenz in a favorable light; they show Lenz's inclination to be less than fully transparent in the face of environmental regulation and auditing. But in neither statement does Lenz say, or even imply, that he would falsify any document or report. Nor does he encourage anyone else to falsify anything. Reluctance to submit to a searching audit is a far cry from agreeing with others to present false documents to the auditor. The government's proffer is mostly quite robust, but against Lenz it is awfully thin gruel.

The government does not have to prove its conspiracy case to establish the admissibility of coconspirator statements. The court has reviewed the entire *Santiago* proffer. The proffer shows that Lenz worked at Didion, in an important managerial position, while some Didion employees falsified the baghouse pressure logs. But the government hasn't met its burden to show by a preponderance of the evidence that Lenz was a member of any conspiracy. So the government may not offer the statements of any conspirators against Lenz, and it may not

7

offer Lenz's statements against other conspirators, unless there is another basis of admissibility. Notably, Lenz's statements are admissible against Lenz himself under Rule 801(d)(2)(A) and against Didion under Rule 801(d)(2)(D).

**D. Exhibits**

   **1. Defendants' objections to the government's exhibits**

The court sustained defendants' objections to the following government exhibits: US14b, 63–68 434–36, 871a and 871b (2001 Johnson Creek inspection); US1370 (2004 citation); US727 (2010 DNR complaint); US1621 (2022 DNR complaint); US672–74 and 676–77 (documents about Didion's "general safety culture"); US907 and 1374–82 (past fires that Clark was not aware of); US24–26, 28, 29, 35, 42, 295, 699, 1223, 1238, 1239, and 1253 (evidence related to dust-hazard analysis); US31, 36, 39, and 76 (exhibits related to explosion protection); and US87b (post-explosion grain-handling procedure)

The court overruled defendants' objection to the government's exhibits related to air permit violations at the ethanol plant (US754, 755, 756a and b, 758a and b, 759, 763a and b, 764a and b, 765c, 767, 768, 769b, 770, 771, 772a–c, 773–77, 778c and d, 779, 816, 829a–c, 834, 840c and f, 843a–e, 1460, and 1463). The court will allow the government to put in evidence of air permit violations that are alleged in the indictment, but evidence that isn't related to overt acts should be limited. The court expects the government to pare down these exhibits significantly.

The court overruled defendants' categorical objection to photos of the mill from 2013 (US301–11, 320–65, 417a–d). These photos may have marginal relevance, but the older the photo, the less probative it is likely to be. The court will not allow the government to offer cumulative evidence.

The court overruled defendants' objection to a December 2013 email that has handwriting on it (US1222). The handwriting can be redacted.

The court overruled defendants' objections to documents that explain the basis for Brandon Leatha's opinion (US 1300–03). But these exhibits will not be shown to the jury, and Leatha may not testify about discovery disputes in this case.

The court overruled defendants' objection to evidence about Didion's vacuum systems (US533a, 534, 540, 541, 542, 1493, and 1501). This evidence may have some marginal relevance, but the government should use its judgment to offer only documents that are truly helpful to the jury.

The court overruled defendants' objections to photos of the A2 electrical room (US1144 and 1145).

The court reserved a ruling on defendants' objections to the government's exhibits related to Expander 5 (2, 576a, 576b, 721a, 721b, 760, 836a, 836b, 845, 846) and exhibits that predate March 25, 2013 (76a, 98, 151, 152, 279a and b, 315, 319c, 320–30, 528, 529a and b, 530a and b, 663b, 676, 726–729, 743, 798a and b, 906–09, 1368, 1369,1370) to allow the government to review those exhibits and explain why they are admissible.

2. **Government's objections to defendants' exhibits**

The court sustained the government's objection to the articles about pressure piling (DIDION3431 and 3433). The court reserved a ruling on whether auditor statements that Didion followed the Master Sanitation Schedule should be excluded as hearsay, whether pages 98 to 104 of Didion's demonstrative exhibit is an accurate reflection of Jeffrey Travis's report, and whether Didion's summary exhibits were admissible under Federal Rule of Evidence 1006. The court overruled the government's other objections. Defendants will have to lay the proper

9

foundation to show that the following exhibits should not be excluded as hearsay: CLARK6000–6168, LENZ5109, DIDION3349–3349D, and DIDION3520.

E. **Deadlines**

By September 21, Didion is directed to: (1) identify the pages of Travis's report that pages 98 to 104 of Didion's demonstrative exhibit are based on; (2) provide the court with a working version of its Summary 1B exhibit.

By September 21, Lenz is directed to provide the government with his list of approximately 150 exhibits for the government to identify which defendants the government is offering those exhibits against.

By September 25, the government must submit the following: (1) if necessary, a revised rebuttal report from Cholin that is limited to any changes required by the corrections made to the original report; (2) an explanation from Cholin about the reasons for the changes to the original report and any changes to the rebuttal report; (3) redline versions of the original and rebuttal reports. Defendants may have until September 27 to submit supplemental reports for their experts that respond to the changes made by Cholin.

By September 25, the government is directed to provide defendants with an updated list of all individuals it considers to be coconspirators.

By September 27, the parties may submit any new objections to the voir dire and introductory instructions. All previous objections are preserved and need not be raised again. Any objections should be limited to typographical errors or new objections to the most recent changes. The parties need not file objections to the post-trial instructions or the verdict form. The court will set a deadline for objecting to those during the trial.


By September 28, the parties are to confer regarding the way to handle exhibits that are admissible against only some of the defendants. Defendants proposed two procedures: (a) a limiting instruction to be read when the evidence is admitted; and (2) a written chart for the jury's use during deliberations that identifies which exhibits were admitted against which defendants. The government stated during the conference that it needed time to consider those proposals.

By September 28, the government will respond to defendants' objections to what defendants call "extraneous and prejudicial" information in the following exhibits: US151, 152, 508–16, 607, 609, 703, 704, 708, 714, 794, 810b, 889–97, 899–901, 902–05, 907–09, 1220, and 1292. The government should either withdraw those exhibits or submit redacted versions.

By September 28, the government must provide defendants with a revised version of US1589 that corrects the errors that defendants have identified.

By September 28, the parties are to disclose to each other which exhibits they intend to use during their opening statements.

By September 29 at noon, the government is to submit a list that: (1) includes the exhibits in Dkt. 438-1 and the exhibits in the list provided by Lenz; and (2) identifies which defendants each of those exhibits will be offered against.

F.  **September 29 conference**

The court will hold a conference with the parties on September 29 at 2:30 p.m. in Courtroom 250. The parties should be prepared to discuss the following issues at the conference:

- the effects that a possible government shutdown could have on counsel's or any witness's ability to participate in the trial;
- which exhibits can be authenticated by stipulation;

11

- which exhibits can be admitted by stipulation;

- defendants' objections to the government's exhibits related to Expander 5 (US2, 576a, 576b, 721a, 721b, 760, 836a, 836b, 845, and 846), exhibits that predate March 23, 2013 (US76a, 98, 151, 152, 279a and b, 315, 319c, 320–30, 528, 529a and b, 530a and b, 663b, 676, 726–729, 743, 798a and b, 906–09, 1368, 1369, and 1370), and the superintendent shift summary (US1589);

- the government's objections to auditor statements that Didion followed the Master Sanitation Schedule, including DIDION3341a, and to Didion's summary exhibits;

- any objections to exhibits that will be used in opening statements;

- how to handle exhibits that are admissible against only some of the defendants;

- defendants' proposal regarding handling extrinsic evidence of prior inconsistent statements under Rule 613(b);

- whether defendants will be giving their opening statement immediately after the government gives its statement.

Entered September 21, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge